1
2
3
4
5          **UNITED STATES DISTRICT COURT**
6          **DISTRICT OF NEVADA**
7
8    HAROLD CORREOS, et al.,                    2:12-CV-556 JCM (NJK)
9              Plaintiffs,
10
     v.
11
     NATIONAL DEFAULT SERVICING
12   CORPORATION, et al.,
13             Defendants.
14

15                        **ORDER**

16        Presently before the court is defendant Wells Fargo Bank, N.A.'s ("Wells Fargo" or
17   "defendant") motion for summary judgment. (Doc. # 27).[1] Plaintiffs Harold Correos and Rosemarie
18   Correos responded (doc. # 32), and defendant replied (doc. # 27). Defendant also filed a supplement
19   to its motion for summary judgment (doc. # 42), and plaintiffs did not respond.[2]

20   **I.    Background**

21        On or about January 25, 2006, plaintiffs purchased property located at 4720 El Tesoro
22   Avenue, Las Vegas, Nevada 98121 (the "property") for $260,500. (Doc. # 28, Ex. A). On the same
23   day, two grant, bargain and sale deeds were recorded in which William Switzer and Rosemarie
24   Correos, respectively, conveyed the property to Harold Correos. (*Id.*, Ex. B & C). Also on January
25   25, 2006, plaintiffs executed a deed of trust and note in the amount of $195,375 secured by the

26   _____

27        [1] Defendant also filed a request for judicial notice. (Doc. # 28).

28        [2] Defendant filed a notice of non-opposition to its supplement. (Doc. # 44).

**James C. Mahan**
**U.S. District Judge**

1   property. (*Id.*, Ex. D). The deed of trust stated that Meridias Capital, Inc. was the lender, Mortgage

2   Electronic Registration Services ("MERS") was the nominee for the beneficiary of the deed of trust,

3   and Old Republic Title was the trustee under the deed of trust. (*Id.*). The foreclose documents are

4   based on the first deed of trust.

5       On February 1, 2006, a second deed of trust was recorded in the amount of $52,100 in which

6   Meridias Capital, Inc. was the lender, MERS was the nominee for the lender, and Old Republic Title

7   was trustee. (*Id.*, Ex. E).

8       On November 1, 2008, plaintiffs defaulted. (*Id.*, Ex. F). On February 13, 2009, a notice of

9   breach and election to sell under the deed of trust ("notice of default") was recorded by National

10  Default Servicing Corporation ("National Default"). (*Id.*). On May 18, 2009, a corporation

11  assignment deed of trust was recorded with the effective date of May 8, 2009, assigning Wells Fargo

12  all beneficial interest in plaintiffs' 2006 note and deed of trust. (*Id.*, Ex G).

13      On May 8, 2009, a substitution of trustee was signed and recorded on May 18, 2009, in which

14  National Default was formally substituted as trustee under plaintiffs' deed of trust. (*Id.*, Ex. H).

15      On May 18, 2009, a notice of trustee's sale was recorded, setting a sale date of June 3, 2009.

16  (*Id.*, Ex. I). Two subsequent notice of trustee's dales were recorded, in 2011 and 2012, respectively.

17  (*Id*., Ex. J & K). On April 27, 2012, the trustee's sale took place on the property. (*Id.*, Ex. L). On

18  May 22, 2012, a trustee's deed upon sale was recorded. (*Id.*). The amount due and owing on the note

19  at the time of the trustee's sale was $255,101.04. (*Id.*).

20      On November 28, 2011, plaintiffs filed a complaint in state court, which defendants

21  subsequently removed to this court. (*See* doc. # 1). The complaint alleges the following five causes

22  of action against defendant Wells Fargo: (1) wrongful foreclosure; (2) rescission and declaratory

23  relief; (3) injunction; (4) violation of NRS § 598D, unfair lending practices; and (5) breach of

24  covenant of good faith and fair dealing.

25  **II.    Legal Standard**

26      The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,

27  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

28

**James C. Mahan**
**U.S. District Judge**

1  show that "there is no genuine issue as to any material fact and that the movant is entitled to a

2  judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment is "to

3  isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

4  (1986).

5      In determining summary judgment, a court applies a burden-shifting analysis. "When the

6  party moving for summary judgment would bear the burden of proof at trial, it must come forward

7  with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

8  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue

9  of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213

10  F.3d 474, 480 (9th Cir. 2000) (citations omitted).

11      In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

12  moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

13  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

14  make a showing sufficient to establish an element essential to that party's case on which that party

15  will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails

16  to meet its initial burden, summary judgment must be denied and the court need not consider the

17  nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

18      If the moving party satisfies its initial burden, the burden then shifts to the opposing party

19  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith

20  Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing

21  party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

22  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

23  of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

24  Cir. 1987).

25      In other words, the nonmoving party cannot avoid summary judgment by relying solely on

26  conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045

27  (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

28

**James C. Mahan**
**U.S. District Judge**

1  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

2  for trial. *See Celotex Corp.*, 477 U.S. at 324.

**III.    Discussion**

3

4       As a preliminary matter, this court has already dismissed defendant National Default. (Doc.

5  # 26). Wells Fargo is the only remaining defendant. The court will address each cause of action

6  against defendant Wells Fargo in turn.

7                **A.    Judicial Estoppel**

8       Plaintiffs filed for bankruptcy protection twice after the notice of default had been filed

9  against the property. Plaintiffs filed for Chapter 11 bankruptcy protection on November 2, 2009 (doc.

10  # 28, Ex. O), and for Chapter 13 bankruptcy protection on November 2, 2011 (*Id.*, Ex. M). In both

11  bankruptcy petitions and schedules, plaintiffs did not mention any of the claims or causes of action

12  contained in the complaint against defendants. (*Id.*) Both bankruptcy cases were dismissed.

13       Defendant contends that plaintiffs are judicially estopped from bringing their prepetition

14  causes of action due to failure to disclose these causes of action during their bankruptcy proceedings.

15  Defendant argues that plaintiffs' claims for unfair lending practices and breach of covenant of good

16  faith and fair dealing concern the January 2006, deed of trust and note, and therefore should have

17  disclosed or amended the schedules in the bankruptcy cases.

18       Plaintiffs argue that dismissal of the bankruptcy cases gives plaintiffs jurisdiction to pursue

19  the instant claims. Plaintiffs also state that they were unaware of defendant's unlawful conduct until

20  their received an audit in February 2012, which demonstrated that defendant did not have authority

21  to executed a lawful foreclosure sale.

22       The loan at issue in these causes of action originated prior to the filing of the bankruptcy

23  petitions. At the commencement of bankruptcy, a debtor must disclose all of his assets to be included

24  in the bankruptcy estate for the potential benefit of creditors. 11 U.S.C. § 521(1); *see also Cusano*

25  *v. Klein*, 264 F.3d 936, 945–46 (9th Cir. 2001). The bankruptcy estate includes all the debtor's

26  potential claims or causes of action that existed at the time he or she filed for bankruptcy. 11 U.S.C.

27  § 541(a)(1); *see also In re Swift*, 129 F.3d 792, 795 (5th Cir.1997); *In re Coastal Plains, Inc.*, 179

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

1   F.3d 197, 208–09 (5th Cir. 1999) ("[i]t goes without saying that the Bankruptcy Code and Rules

2   impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including*

3   *contingent and unliquidated claims*.") (italics in original).

4         The law clearly bars a debtor from raising prepetition causes of action that were not

5   mentioned in a debtor's bankruptcy. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th

6   Cir. 2001) ("[I]n the bankruptcy context, a party is judicially estopped from asserting a cause of

7   action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or

8   disclosure statements."); *see also Hay v. First Interstate Bank of Kalispell*, 978 F.2d 555, 557 (9th

9   Cir. 1992); *Coastal Plains*, 179 F.3d at 208 (debtor is barred from bringing claims not disclosed in

10  its bankruptcy schedules); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d

11  Cir. 1988) (debtor's failure to list potential claims against a creditor "worked in opposition to

12  preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect,"

13  and debtor was estopped by reason of such failure to disclose). A debtor need only have "knowledge

14  enough of the facts to know that a cause of action exists during the pendency of the bankruptcy."

15  *Hamilton*, 270 F.3d at 783.

16        In this case, there is no dispute that plaintiffs failed to disclose their prepetition causes of

17  action in their bankruptcy matters. While plaintiffs argue that they did not have notice of defendant's

18  relevant conduct until February 2012, plaintiffs' Chapter 11 bankruptcy was pending when plaintiffs

19  received notice and they still failed to amend their schedule or state in the bankruptcy case any of

20  the potential claims or cases of action asserted in the instant complaint. Further, plaintiffs listed

21  America's Servicing Company in their bankruptcy petition as an assigned creditor for the mortgage

22  loan. Thus, plaintiffs clearly had some inclination regarding any mishandling of their loan because

23  plaintiffs paid for a legal audit.

24        Further, dismissal of the bankruptcy matters does not absolve plaintiffs from the burden of

25  disclosing potential claims or causes of action. Judicial estoppel bars litigants from asserting

26  incompatible statements in different cases. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d

27  597, 600-01 (9th Cir. 1996); *see also Conrad v. Bank of Am.*, 45 Cal. App. 4th 133, 146-147 (1996).

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

1    In the instant matter plaintiffs assert mishandling of their mortgage loan; while plaintiffs failed to

2    challenge the handling of the 2006 deed and note in bankruptcy court. This is precisely the type of

3    conduct that the doctrine of judicial estoppel seeks to prevent.

4        Thus, the court finds that plaintiffs had knowledge of the facts, *Hamilton*, 270 F.3d at 783,

5    that underlie their prepetition claims for predatory lending practices. That is, plaintiffs had

6    knowledge of the facts that underlie their unfair lending practices cause of action (NRS § 598(D)),

7    their breach of good faith and fair dealing cause of action, their declaratory relief cause of action, and

8    their rescission cause of action. As such, plaintiffs are judicially estopped from bringing claims for

9    violation of NRS § 598D, unfair lending practices; breach of covenant of good faith and fair dealing;

10   and rescission and declaratory relief.

11       Although plaintiffs are judicially estopped from bringing these claims, the court, in good

12   faith, turns to the merits of these claims.

13               **I.     NRS § 598D, unfair lending practices**

14       Nevada's Unfair Lending Practices Act (NULPA) prohibits lenders from engaging in certain

15   activities in connection with the origination of loans. *See* NRS 598D.010, *et seq.* Under NULPA,

16   certain actions by a lender during the origination of a loan are unfair lending practices.  *See id.*; *see*

17   *also Berilo v. HSBC Mortg. Corp.*, no. 2:09-cv-02353, 2010 WL 2667218, at *3 (D. Nev. June 29,

18   2010) ("[T]o state a valid claim for unfair lending practices, a plaintiff must allege that a defendant

19   is a lender under the statutory definition and made the loan in question. A plain reading of NRS

20   598D.100(1)(b) suggests that successors in interest to the loan originator (or a loan servicer) cannot

21   incur liability for a violation because this statute applies only to circumstances surrounding the

22   origination of a loan.").

23       Defendant is entitled to summary judgment on this cause of action for three reasons. First,

24   defendant did not make the loan at issue and cannot be subject to unfair lending practices. Plaintiffs

25   admit that Wells Fargo was not the original lender under the January 2006, note and deed of trust.

26   (Doc. # 1, ¶ 9;doc. # 28, Ex. D). Second, § 598D.100 was not signed into law until June 13, 2007,

27   and there are no provisions for the retroactive application of NRS § 598D to a loan obtained in

28

**James C. Mahan**
**U.S. District Judge**

1   January 2006. And third, the statute of limitations is two years running from the date of the issuance

2   of the loan. *See Patterson v. Grimm*, no. 2:10-cv-1292, 2010 WL 4395419, at *3) (noting two year

3   statute of limitations for NULPA); *see also* NRS § 11.190(3)(a). This loan occurred in January 2006,

4   and plaintiffs did not file this action until November 2011. Therefore, this action is time barred.

5      Because there is no genuine issue of material fact that defendant did not violate NRS § 598D,

6   defendant is entitled to summary judgment in its favor on this cause of action.

7                 **ii.      Breach of the covenant of good faith and fair dealing**

8      Plaintiffs allege the defendant breached their promise not to foreclose and contravened the

9   intention and spirit of their agreement.

10     "Where the terms of a contract are literally complied with but one party to the contract

11  deliberately [contravenes] the intention and spirit of the contract, that party can incur liability for

12  breach of the implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis*

13  *Prods. Inc.*, 107 Nev. 226, 232 (1991). To prevail under the contract theory of breach of implied

14  covenant of good faith and fair dealing, a plaintiff must establish each of the following: (1) plaintiff

15  and defendant were parties to a contract; (2) defendant owed a duty of good faith to plaintiff; (3)

16  defendant breached that duty by performing in a manner that was unfaithful to the purpose of the

17  contract; and, (4) plaintiff's justified expectations were denied. *See Perry v. Jordan*, 111 Nev. 943,

18  948 (1995).

19     Here, plaintiffs have failed to establish that a contractual agreement existed between plaintiffs

20  and defendant that would form the basis of a breach of the covenant of good faith and fair dealing.

21  Plaintiffs' complaint merely establishes that plaintiffs engaged in negotiations of a mortgage loan

22  modification agreement, but plaintiffs do not assert that plaintiffs submitted any documentation to

23  defendant in performance of any alleged agreement. Plaintiffs have failed to establish that defendant

24  entered into a binding contractual agreement with them regarding loan modification.

25     Therefore, summary judgment in favor of defendant as to plaintiffs' claim for breach of the

26  covenant of good faith and fair dealing is appropriate.

27

28

**James C. Mahan**
**U.S. District Judge**

                                      - 7 -

1

iii.     **Rescission and declaratory relief**

Plaintiffs seek a declaratory judgment that defendant lacks standing to pursue rights under the note and seeks rescission of the deed of trust.

As an initial matter, declaratory relief is a remedy and not a separate cause of action. *See Freeto v. Litton Loan Serv., LP*, no. 3:09-cv-754, 2011 WL 112183, at *3 (D. Nev. Jan. 12, 2011) (dismissing claims for declaratory relief and permanent injunction because those remedies may only "be afforded to a party after he has sufficiently established and proven his claims").  Plaintiffs have not set forth sufficient facts to demonstrate that defendant does not have standing to foreclose under the note.

Further, the remedy of rescission is available only "where a borrower is willing and able to tender the balance on the promissory note" *Coward v. First Magnus Financial Corp*., 2009 WL 3367398, *6 (D.Nev.2009) (citing *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1173 (9th Cir. 2003); *LaGrone v. Johnson*, 534 F.2d 1360, 1392 (9th Cir. 1974)). Plaintiffs have failed to show facts that they are willing and able to tender the balance on the promissory note in the event of rescission. Accordingly, plaintiffs cannot prevail on this claim and summary judgment is granted in favor of defendant.

**B.     Wrongful Foreclosure**

The court now turns to those claims that plaintiffs are not judicially estopped from asserting in this action. That is, plaintiffs did not have an obligation to disclose their claim for wrongful foreclosure as the foreclosure on the property had not yet occurred.

To succeed on a claim for wrongful foreclosure, plaintiffs must show that (1) defendants exercised a power of sale or foreclosed on plaintiff's property and (2) at the time the power of sale was exercised, there was no breach of condition or failure of performance by plaintiffs that would have authorized the foreclose. *Collins v. Unions Fed. Sav. & Loan Ass'n.*, 99 Nev. 284, 304 (1983). "The material issue of fact in a wrongful foreclosure claim is whether the [plaintiff] was in default when the power of sale was exercised." *Id.*

. . .

James C. Mahan
U.S. District Judge

- 8 -

Based on the notice of default, plaintiffs defaulted on their mortgage on November 1, 2009, and have failed to tender the full amount due on the note at the time of the sale of the property. (Doc. # 28, Ex. F). And plaintiffs admit to defaulting on the 2006 note and failing to cure the arrearages on the note. (Doc. # 1, 5-7). Further, plaintiffs have not performed equity under their January 2006 deed of trust and note because they have not tendered any defaulted mortgage payments. *See Barnett-Moore v. Fed. Home Loan Mortgage Corp.*, 3:12-CV-250-RCJ-VPC, 2013 WL 315220 (D. Nev. Jan. 25, 2013) ("For the plaintiff to do equity, it is generally required that the plaintiff tender the undisputed amount due on the note in order to challenge the validity of the foreclosure sale.").

Because it is undisputed that plaintiffs have breached a condition and failed to perform under the January 2006 deed of trust and note, summary judgment in defendant's favor as to plaintiffs' wrongful foreclosure cause of action is appropriate.[3]

**C.    Injunctive relief**

Last, plaintiffs seek an injunction setting aside the foreclosure on the property. Under Nevada law, injunctive relief is not a cause of action, but rather a type of remedy. *See In re Wal-Mart Wage & Hour Employment Practices Litig.*, 490 F.Supp.2d 1091, 1130 (D. Nev. 2007). Because plaintiffs have not shown that the foreclosure was wrongful, plaintiffs are not entitled to this relief.

**III.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Wells Fargo Bank, N.A.'s motion for summary judgment (doc. # 27) be, and the same hereby, is GRANTED.

IT IS FURTHER ORDERED that the clerk of the court shall enter judgment and close the case.

DATED May 14, 2013.

**UNITED STATES DISTRICT JUDGE**

---

[3] To the extent plaintiffs attempt to allege a statutory wrongful foreclosure under NRS §107.080, the court finds that the process complied with the applicable version of NRS §107.080.